IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**DYNASTY ENERGY SERVICES, LLC**                                              **PLAINTIFF**

V.                                                             **CIVIL ACTION NO. 2:23-CV-133-KS-MTP**

**LIBERTY OPERATING COMPANY,**
**LLC, VERDE SERVICES, LLC, AND**                                            **DEFENDANTS**
**JOHN DOES 1-10**

## ORDER

This matter is before the Court on the Motions for Summary Judgment, *see* [95], [97], [113], and [120], filed by the parties in this breach of contract action that stems from the parties' failed attempt to expand the production capabilities of an existing oil well.  After considering the motions and relevant filings, the Court finds that genuine issues of material fact exist as to the parties' claims, thereby precluding the grant of summary judgment.  *See* Fed. R. Civ. P. 56.  Accordingly, the Motions for Summary Judgment are hereby denied.  *See* [95], [97], [113], and [120].

   I.   THE PARTIES

Plaintiff Dynasty[1] is a specialized oilfield services operating company that provides, among other things, support for oil and gas exploration companies on existing oil wells.  [2] at 2.  Defendant Liberty Operating Company, LLC ("Liberty"), whose principal is Edwin Wildman, owns, operates, and services existing oil and gas wells.  Wildman Dep. [115] at 21-22.[2]  Defendant Verde is a cased-hole oilfield service company that, among other services, provides testing on wellbores to analyze the structure and integrity of wells.  Tew Dep. [101] at 12-15.[3]

---

[1] Dynasty is a Louisiana LLC owned by Texas and Louisiana LLCs.  *See* [2] at 1, [24].
[2] Note: throughout this Order, when the Court refers to depositions, the page number indicates the page within the deposition itself, not the page number assigned to the document by the Court's CM/ECF system.
[3] Verde is an LLC organized under the laws of the State of Delaware with its principal place of business located in Laurel, Mississippi.  [2] at 1.  Vernon Tew of Laurel, Mississippi, is a member of Verde and serves as its registered agent for service of process.  *Id.*; [101] at 7.  Liberty is a Mississippi LLC, and Edwin Wildman of Laurel, Mississippi,

Relevant to this action, Plaintiff Dynasty provided specialized oilfield "fishing"[4] services in July and August 2022 for the Miller-Price Well #1 ("Miller-Price #1"), located in Jones County, Mississippi, in an effort to expand the production of the well, which was owned and operated by Defendant Liberty.  In particular, Dynasty was tasked by Defendants Verde and Liberty with cutting and cleaning out packing materials, known as a "permanent packer," that had been installed by a previous well owner at the base of the Miller-Price #1 wellbore.  Pitts Dep. [106] at 21-22.

In a nutshell, how Defendants tasked Dynasty with this job and whether a valid contract exists form one aspect of this lawsuit.  The manner in which Dynasty carried out the job forms another part of it.  And Verde's failure to pay all of Dynasty's work invoices is the final piece of the puzzle.

## II.     BACKGROUND

First drilled in 2001, Miller-Price #1 reaches a depth of just over 15,000 feet.  Since August 2021, Defendant Liberty, helmed by its principal, Wildman, has owned and operated the subject well.  Wildman Dep. [115] at 27.  As a part of his initial research on the well, Wildman engaged Verde through one of its members, Vernon Tew, to perform some unspecified work on Miller-Price #1.[5]  Tew Dep. [101] at 51.  After consulting a geologist, performing other research, and considering the historic performance of the well, Wildman thought there was potential for increased production[6] in the depths below the bottom of the well, which was formed by a "permanent packer." Wildman Dep. [115] at 37-47.  To that end, in June 2022, Liberty reached a

---

is its registered agent for service of process.  *Id.*  Because the action involves citizens of different states, and the amount in controversy exceeds $75,000, the Court has jurisdiction pursuant to 28 U.S.C. § 1332.

[4] Based on the filings, "fishing" services in the oil industry include the removal of debris, lost tools, or packing materials from the wellbore of an oilwell.

[5] Tew testified that he and Wildman have been friends for decades and that they have partnered 20 to 50 times on oilfield jobs over the years.  Tew Dep. [101] at 34-36.

[6] Between August 2021 and June 2022 (excluding the month of December 2022, for which no figures were provided), Miller-Price #1 produced an average of 319.8 barrels per month.  Wildman Dep. [115] at 61.  For the month of July 2022, Wildman testified that Liberty was able to increase production to 691 barrels through the use of "production enhancements," such as pumping "a treatment of super scale that removed . . . some of the calcium carbonate."  *Id.* at 62.

verbal financial agreement with Verde to advance the project.[7]  *Id.* at 63.  In sum, Verde agreed to finance the work required to increase production, and Liberty agreed to repay Verde's up-front costs out of future profits from the well, plus a 20 percent "back end, working interest" in it.  *Id.* at 59.  Neither Verde nor Liberty had the equipment required for the project, so Wildman of Liberty approached Dynasty's regional manager, Trent Pitts, about the job.  Pitts Dep. [106] at 21.  Wildman represented to Pitts that Liberty and Verde had partnered on the well to increase production, and that Dynasty should bill Verde for its services.  *Id.*

Pitts admits that this was an unusual arrangement.  *Id.* at 26.  Liberty did not have good credit with Dynasty, but Verde had good credit with Dynasty based on Verde's recent work with Dynasty on other projects.[8]  Verde, through Tew, has admitted that Verde would act as a "guarantor" to pay Dynasty's invoices on a thirty-day cycle, which Tew described as "an industry standard."  Tew Dep. [101] at 24-25, 55-56.  And Verde's chief financial officer also confirmed that Verde would fund the work on the well.  Davis Dep. [103] at 44.  Thus, after several more phone conversations between Wildman and Pitts regarding pricing and logistics, which culminated in a formal quote by Pitts, Dynasty embarked on its "fishing" expedition at Miller-Price #1 on July 8, 2022.  *See* Pitts Dep. [106] at 23; [131-4] at 1 (Dynasty Invoice No. 4378300).

The work did not proceed as the parties had hoped, resulting in damage to the wellbore and a cessation of production on or about August 12, 2022.  As one would expect, the parties now blame each other for the failure.  In short, Dynasty argues that the wellbore was damaged prior to

---

[7] Verde and Liberty's partnership agreement regarding Miller-Price #1 was not memorialized in writing.  *Id.* at 39.  Verde's chief financial officer, Mike Davis, confirmed that Verde and Liberty customarily worked on joint ventures with only verbal agreements.  Davis Dep. [103] at 43.

[8] According to Plaintiff's First Amended Complaint, Dynasty had performed services for Liberty in the past, but Liberty had failed to pay Dynasty as agreed.  [2] at 2.  Accordingly, Dynasty "refused to continue providing services for Liberty."  *Id.*  Pitts testified that when Wildman initially visited him about the Miller-Price #1 job, Liberty had several unpaid invoices with Dynasty.  Pitts Dep. [106] at 20.  Only after Wildman paid those invoices did Pitts listen to Wildman's proposal regarding the Miller-Price #1 project.  *Id.*  Pitts also testified that he told Wildman that Liberty would have to pay up front for Dynasty's services.  *Id.*

its work, that its job site foreman[9] with 60 years of experience[10] reported the prior damage to Wildman, that Wildman ignored Dynasty's recommendations regarding "fishing" methods, and that Wildman insisted that Dynasty pursue a particular course of drilling that ultimately damaged the well. On the other hand, Liberty and Verde maintain that Dynasty's work, performed in an "unworkmanlike manner" and contrary to Wildman's directions as the well's owner and operator, damaged the well. Verde Am. Answer [8] at 10-11; Liberty Answer [10] at 9-10. Verde paid one of Dynasty's invoices covering work from July 8 to July 23, 2022, in the amount of $74,686.01. *See* [131-4] (invoice) and [131-5] (Verde check). After Dynasty refused to comply with Wildman's request that it "tear up" its remaining invoices exceeding $200,000, this litigation followed. Am. Compl. [2] at 8; Wyant Dep. [107] at 51-53.

Dynasty brings claims of breach of contract, breach of implied covenant of good faith and fair dealing, and tortious breach of contract against Verde. *Id.* at 5-7. Dynasty alleges a claim of tortious interference with contract and tortious interference with business relationship against Liberty. *Id.* at 7. Dynasty demands all sums due under the "subject contract," along with interest, incidental and consequential damages, punitive damages, costs, and attorney fees. *Id.* at 7-8.

Both Verde and Liberty deny Plaintiff's allegations, allege affirmative defenses, and pursue counter-claims against Dynasty. Verde seeks a declaratory judgment pursuant to Rule 57 of the Mississippi Rules of Civil Procedure that "the parties entered into a valid and enforceable contract" and brings counter-claims of breach of contract, tortious breach of contract, and breach of the implied covenant of good faith and fair dealing. Am. Answer [8] at 11-13. Verde seeks damages for the failure to realize profits,[11] accrued interest, incidental and consequential damages, punitive

---

[9] Dynasty's job site foreman or "fishing tool operator," Bill Smith, has since retired, is in ill-health, and has not been available for deposition. Pitts Dep. [106] at 138.
[10] *See* Sumrall Dep. [108] at 33.
[11] In his deposition, Verde's CFO admitted that Liberty had paid Verde for its "net receivable" on the project with stock in a start-up company. Davis Dep. [103] at 77-78.

4

damages, and expenses, costs, and reasonable attorney's fees. *Id.* at 13-14. Liberty alleges a breach of contract claim as a third-party beneficiary to the contract between Dynasty and Verde and a tortious breach of contract claim against Dynasty by extension of the duty Dynasty owed to Verde. Answer [10] at 10. Liberty asks for lost revenue or, alternatively, that the Court "order Dynasty to solely bear the cost of drilling a sidetracked well so that Liberty can recover its lost production and revenue without additional expense to Liberty." *Id.* at 12.

### III.  SUMMARY JUDGMENT STANDARD

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). The moving party bears the initial burden of showing there is no genuine issue for trial, and it may do so by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.), *cert. denied,* 506 U.S. 832 (1992) (quoting *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 301 (5th Cir. 1990)).

At this juncture, the Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. If the moving party meets its initial burden, the nonmoving party who will have the burden of proof at trial must go beyond the pleadings and come forward with summary judgment evidence establishing the existence of a genuine issue; that evidence must be such that if introduced at trial it would suffice to prevent a directed verdict against the nonmovant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986). The nonmovant's "burden is not satisfied with some metaphysical doubt as to the material

5

facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Stout v. Vincent*, 717 Fed. App'x 468, 470–71 (5th Cir. 2018) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In addition, "speculation, improbable inferences, . . . and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

IV.  DISCUSSION

As an initial matter, the crux of this case is whether a valid contract existed between the parties and, more specifically, whether a valid contract existed between Dynasty and Verde. As this case is based on diversity jurisdiction, Mississippi law governs. Under Mississippi law, a valid contract consists of the following elements: "(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation." *Estate of Davis v. O'Neill*, 42 So. 3d 520, 527 (Miss. 2010)(citations omitted).

Turning to Verde's Motion for Summary Judgment, Verde now takes the position that any purported contract with Dynasty is void due to lack of consideration, a failure of consideration, insufficiently definite terms, and lack of mutual assent or meeting of the minds. *See* Memo. [121] at 4-14. Verde asserts that these arguments are "merely an expansion of the denial[s] in their answer." *Germain v. U.S. Bank*, 920 F.3d 269, 274 (5th Cir. 2019). Alternatively, in its counter-claims, Verde asserts the existence of a contract between it and Dynasty by asking the Court to "declare that the parties entered into a valid and enforceable contract," and Verde asserts that Dynasty "materially breached the contract between the parties," which caused it damages. Am. Answer [8] at 11-12.

While Verde's summary judgment position may be an "expansion" of the general denials found in its answer, these newly-posited arguments ignore the undisputed facts, developed during

6

discovery, that both Verde's member Tew and its CFO Davis acknowledged the existence of a contract, and Verde paid for a portion of Dynasty's work on Miller-Price #1 before negotiations as to the remaining invoices broke down. What is more, Verde's new-found position also ignores that Verde's partner in the project, Liberty, through its principal Wildman, oversaw work at Miller-Price #1 on a daily basis. Further, Wildman signed Dynasty's daily cost sheets totaling nearly $240,000.00 on behalf of Verde as its "Drill Foreman." *See* [131-2]. Verde and Dynasty's history of collegial work on past projects, the companies' customary procedure of billing on the projects, and Verde's credit application with Dynasty also tend to support Dynasty's arguments that a valid contract existed between the parties for Dynasty's work on the Miller-Price #1 project.

As for Liberty, it argues in its Answer [10] that it is a third-party beneficiary to the contract between Dynasty and Verde. Answer [10] at 10. However, in its Motion for Summary Judgment, Liberty asserts that Wildman, "as a member of Liberty, was functioning in the capacity of an agent of Verde during the workover operations on" Miller-Price #1. Memo. [114] at 6. Liberty apparently now takes that position to avoid Dynasty's claim of tortious interference with contract because as an agent, it asserts, it cannot be sued as a third party for tortious interference with the contract between Dynasty and Verde, absent a showing of bad faith. *Id.* at 7.

For its part, Dynasty argues that it is entitled to summary judgment as to all of Defendants' counter-claims. *See* Memo. [96], [98]. Dynasty argues that Verde's counter-claims of breach of contract and tortious breach of contract should be dismissed. Likewise, Dynasty argues for dismissal of Liberty's counter-claims of breach of contract and tortious breach of contract that mirror those asserted by Verde.

While Dynasty has made a strong showing that a contract existed between it and Verde for the work on Miller-Price #1, the Court finds, however, that genuine issues of material fact exist as to the Plaintiff's contractual claims and Defendants' counter-claims. The Court is of the opinion

that this case would be best resolved upon a full presentation of the facts in the context of a trial setting, and therefore, the Court will deny the parties' motions for summary judgment at this time.

SO ORDERED and ADJUDGED, this 30th day of June, 2025.

                                             */s/ Keith Starrett*
                                             KEITH STARRETT
                                             UNITED STATES DISTRICT JUDGE